**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **DAVID J. ADAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 3:11cv272-REP-DWD** |
| | ) | |
| **OBJECT INNOVATION, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on the Defendant's Motion to Vacate Default Judgment (ECF No. 10), the

Defendant's Motion for Extension of Time to File Answer (EFC No. 11),[1] the Plaintiff's Motion

for Default Judgment (ECF No. 21),[2] and the Plaintiff's Motion to Seal Declaration and Exhibits

in Support of Motion for Default Judgment (ECF No. 20).  The matter has been thoroughly

briefed by the parties and is "ripe" for decision.  Although the Defendant has requested oral

argument on the Plaintiff's Motion for Entry of Default Judgment, the Court finds that oral

---

[1] The Defendant's Motion to Vacate Default Judgment (ECF No. 10) and the Defendant's Motion for Extension of Time to File Answer (ECF No. 11) are identical.  Accordingly, the Court will treat the two motions as one motion seeking complementary forms of relief.

[2] The analysis of the Plaintiff's Motion for Default Judgment (ECF No. 21) and the Defendant's Motion to Vacate Default Judgment (ECF No. 10) are nearly identical, except that the standard to obtain relief from a default judgment under Rule 60(b) is higher than that required for relief from entry of default under Rule 55(c).  See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 420 (4th Cir. 2010).  As the Court shall explain, *infra* at Section IV(B), the distinction is critical in this case.  Although the Defendant's motion was initially captioned as one seeking relief from default judgment pursuant to Rule 60(b), the District Judge in this case has since vacated the entry of default as having been entered by the Clerk's Office in error (ECF Nos. 9, 19).  Accordingly, the Court shall treat the Defendant's Motion to Vacate Default Judgment as a request for relief pursuant to Rule 55(c), which is consistent with the parties' submissions addressing the Plaintiff's Motion for Default Judgment (ECF No. 21).

argument will not materially aid in the decisional process.  For the reasons set forth herein, it is

the Court's recommendation that the Defendant's Motion to Vacate Default Judgment (ECF No.

10) and the Defendant's Motion for Extension of Time to File Answer (EFC No. 11) be

GRANTED; that the Plaintiff's Motion to Seal Declaration and Exhibits in Support of Motion

for Default Judgment (ECF No. 20) be GRANTED; and that the Plaintiff's Motion for Default

Judgment (ECF No. 21) be DENIED.

## I. BACKGROUND

On April 27, 2011, David J. Adams ("Adams" or the "Plaintiff") initiated this action by

filing a Complaint against Object Innovation, Inc. ("Object Innovation" or the "Defendant"),

alleging breach of an employment contract and seeking specific performance and damages in the

amount of $970,750.00.  (Compl. at 6, ECF No. 1.)  Although Object Innovation had employed

Adams as a sales director in July 2007 and, later, as Chief Executive Officer through August

2010, the present lawsuit arose out of a subsequent contract to serve as the company's Vice

President of Sales (the "Contract"), allegedly effective in August 2010.  (Id. ¶¶ 6-11.)

## A.    Negotiation of Contract

Of relevance to the motion now before the Court, the Contract provides that it "is

effective through December 3, 2010 and is contingent upon your [Adams's] signed

Confidentiality and Proprietary Rights Assignment Agreement.  Please acknowledge your

[Adams's] acceptance of this offer by signing, dating and returning to our [Object Innovation's]

offices."  (Contract at 3, attached as Compl. Ex. C, ECF No. 1-5.)  Although the Contract

attached to the Complaint has been signed by Adams, he did not indicate the date of his signature

and there is nothing in the record to demonstrate that he did so before the offer expired on

December 3, 2010.  (See Decl. of Aaron Roberts in Sup. of Mot. to Vacate Default J. ("Roberts

2

Decl.") at ¶ 14, ECF No. 10-5.)  Moreover, there is nothing in the record to indicate that the "Confidentiality and Proprietary Rights Assignment Agreement" was ever signed by, or even delivered to, Adams.  (Id. at ¶ 15; see also Def.'s Mem. Sup. Mot. Vacate Default J. ("Def.'s Mem.") at 7; Decl. of David J. Adams Opp'n Mot. Vacate Default J. ("Adams Decl.") at ¶ 20.) The only date appearing on the face of the Contract is November 30, 2010, which appears on the first page of the document and does not appear to correspond with acceptance.  (Contract at 1.)

Adams never resigned from Object Innovation, instead performing services as its Vice President of Sales between August 2010 and January 2011, when he was terminated from an affiliated company by Roberts.  (Adams Decl. at ¶ 18; Roberts Decl. at ¶ 17.)  In that role, he sent 406 business-related emails and conducted thirty-two business-related conference calls, reporting his activities to Object Innovation's new CEO, Bill Nygard, and its Chief Information Officer, Sirdevan.  (Id. at ¶ 21.)  At their instruction, Adams also terminated two employees from the company during his tenure as Vice President of Sales, negotiating and implementing their severance agreements from his offices in Virginia.  (Id. at ¶ 22.)

## B.   Procedural History

After initiating the lawsuit, counsel for Adams contacted one Paul D. Anders ("Anders"), who represented Object Innovation in a related lawsuit, to request acceptance of service.  (Decl. of Paul D. Anders Sup. Mot. Extend Time File Resp. Pleadings ("Anders Decl.") at ¶ 2, ECF No. 10-3.)  Anders discussed the inquiry with one Aaron Roberts ("Roberts"), the attorney acting as general counsel for Object Innovation who also serves as a corporate officer.  (Id. at ¶ 4; Pl.'s Ex. 16-1, Florida Department of State Certified 2010 Annual Report, ECF No. 16-1.)  Based on this discussion, Anders responded to Adams' counsel that, while his firm would likely represent

Object Innovation in the litigation, the firm was not authorized to accept service on its behalf. (Id. at ¶ 5.)

Beginning in late April or early May 2011, Scott M. Sirdevan ("Sirdevan"), chief information officer and registered agent for Object Innovation, began receiving unsolicited emails from attorneys notifying him of the lawsuit and soliciting their engagement.  (Decl. of Scott M. Sirdevan Sup. Mot. Vacate Default J. ("Sirdevan Decl.") at ¶¶ 2-3, ECF No. 10-4.)  As a matter of course, Sirdevan forwarded the emails to Roberts in order to keep him informed.  (Id. at ¶ 4.)  Roberts told Sirdevan not to be concerned about responding to the litigation at that juncture, indicating that a response would be forthcoming once Object Innovation was properly served with process.  (Id. at ¶ 5; Roberts Decl. at ¶ 6.)

On May 9, 2011, Sirdevan was personally served with the Summons and Complaint at his home in Fleming Island, Florida -- the address listed with the Florida Department of State. (Sirdevan Decl. at ¶ 6; Adams Decl. at Ex. 1, ECF No. 15-1.)  He then informed Roberts that he had "received the Summons" at his home, but he did not indicate that he had been personally served with process; nor did he transmit a copy of the papers to Roberts.  (Id. at ¶¶ 6-7, Ex. 1; Roberts Decl. at ¶ 8.)  Because Sirdevan indicated that he had received the pleadings at his home, rather than at his office, Roberts mistakenly assumed that the Summons and Complaint were improperly served by mail.  (Roberts Decl. at ¶ 8.)  At that time, Sirdevan was distracted by personal matters that prevented him from adequately fulfilling his business responsibilities with Object Innovation.  (Id. at ¶ 8.)

On June 7, 2011, Anders logged onto the Court's electronic filing system in connection with another matter and decided to review the status of this lawsuit.  (Anders Decl. at ¶ 6.) Based on his review of the docket, he determined that Sirdevan had been personally served with

4

the lawsuit and immediately contacted Roberts to inform him of that fact.  (Id. at ¶¶ 6-7.)  On

June 8, 2011, the Clerk of the Court granted Adams's Request for Entry of Default, entering a

default judgment and prompting Object Innovation to file the now-pending Motion to Vacate and

for an Extension of Time to File an Answer (ECF Nos. 10, 11).  The District Judge assigned to

the case has since vacated the default judgment as having been granted in error, prompting

Adams to file a Motion for Default Judgment (ECF No. 21).[3]  Adams has also filed two exhibits

under seal, and the Motion to Seal (ECF No. 22) remains pending before the Court.

**C.      Object Innovation's Contacts with Virginia**

According to Object Innovation, it does not own property in Virginia, does not *currently*

maintain an office in Virginia, is not registered to do business in Virginia, and has no customers

in Virginia.  (Sirdevan Decl. at ¶¶ 12-13 (emphasis added).)  However, it appears from the

pleadings that the Contract at issue was transmitted to and executed by Adams in his home state

of Virginia.  (Compl. ¶¶ 4, 10.)  Significantly, the Contract specifically acknowledges that

Adams would perform his obligations from his "Richmond, VA home."  (Contract at 1.)

It has also been alleged that one Dave Wheeler ("Wheeler") traveled to Virginia to

personally negotiate the terms of the Contract with Adams.  (Adams Decl. at ¶ 17.)  Although

Wheeler's role with the company is unclear, he appears to have considerable authority in that he

must "approve" executive-level employment.  (Roberts Decl. at ¶ 14.)  Also, if true, the

allegations contained in the Complaint suggest that Adams performed his responsibilities (as had

been negotiated with Wheeler) from his home in Virginia, including daily telephone calls with

---

[3] The Defendant's Motion to Vacate appears to have been rendered moot by District Judge
Robert E. Payne's Order, but the same issues are raised again as a result of the Plaintiff's Motion
for Default Judgment.  The Issues in the Defendant's Motion to Vacate and the Plaintiff's
Motion for Default Judgment are substantively similar, and so the Court shall address the
motions together in Section IV, *infra*, under the heading "Default Judgment."

Object Innovation's sales team, customers, and partners.  (Compl. at ¶ 12.)  Those activities occurred from August 2010 through January 2011.  (Id. at ¶ 12; Adams Decl. at ¶ 21.)

Moreover, while serving as Object Innovation's Chief Executive Officer, Adams operated the company from offices leased by Object Innovation in Powhatan, Virginia.  (Adams Decl. at ¶¶ 6, 16.)  During his tenure as CEO, Object Innovation's Chief Technology Officer worked at the Powhatan, Virginia offices, and the company transferred its Chief Financial Officer and its office manager to Virginia.  (Id. at ¶ 6.)  It also hired an additional part-time employee in Virginia.  (Id. at ¶ 7.)  As a result, the company's administration, human resource management (including payroll), sales planning, and records maintenance were all managed from Powhatan, Virginia.  (Id. at ¶¶ 11-15.)  To that end, the company also filed payroll taxes in Virginia in regard to its Virginia employees, accepted payments in Virginia, and deposited funds at a Virginia branch of a national bank.  (Id. at ¶¶ 14, 23.)

## II. MOTION TO SEAL

As a preliminary matter, the Court must address Adams's Motion to Seal Declaration and Exhibits in Support of Motion for Default Judgment.  (ECF No. 22.)  Adams moves to seal the unredacted version of his declaration, filing in the public record a version in which all proprietary and confidential information contained therein has been redacted.  Object Innovation does not object to the request that the documents be filed under seal.

Although the Court's authority to seal court documents is well-established in the Fourth Circuit, the Court may do so only "if the public's right of access is outweighed by competing interests."  Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000).  "The common law presumes a right to inspect and copy judicial records and documents," and the denial of access is within the sound discretion of the court.  Stone v. Univ. of Md. Medical Sys. Corp., 855 F2d 178,

180 (4th Cir. 1988).  Likewise, the First Amendment guarantees access, but only "to particular judicial records and documents," Id. at 180, including those filed in support of dispositive motions in civil cases.  See Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (citing Publicker Industries, Inc. v. Cohen, 733 F.2d 1059, 1067-71 (3d Cir. 1984); In re Continental Illinois Sec. Litig., 732 F.2d 1308, 1308 (7th Cir. 1984)).

To determine whether the interests in sealing the records outweigh First Amendment considerations, a court must engage in a three-part procedure: (1) the court must provide public notice of the request to seal and allow interested parties a reasonable opportunity to object; (2) the court must consider less drastic alternatives to sealing the documents; and (3) the court must articulate specific reasons and factual findings supporting its decision to seal.  Ashcraft, 218 F.3d at 302.  Because the First Amendment standards afford greater substantive protection to the public's right to access, satisfying the First Amendment standards also necessarily satisfies the relevant common law standards.

Here, all three requirements are satisfied.  First, Adams publicly filed his motion to seal on August 5, 2011, and after more than four months, the Court has received no objections from the public.  Second, Adams proposal to redact only the proprietary and confidential information, rather than seal the entirety of his declaration, constitutes the least drastic method of shielding the information at issue.  Stated another way, the proposal seals the confidential information and nothing more.  Finally, there is no legitimate public interest in disclosing the proprietary and confidential information of Object Innovation, a closely held corporation, and disclosure to the public could result in significant damage to the company.  Accordingly, the Court recommends that the Plaintiff's Motion to Seal (ECF No. 22) be GRANTED.

### III. PERSONAL JURISDICTION

Although Object Innovation has not filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), it raises the issue as one of several meritorious defenses that would permit the Court to set aside default. (Def.'s Mem. at 7-9.) It also raises the argument that the default judgment should be set aside as void for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 60(b)(4). However, the Court is well-satisfied from the evidence before it that Object Innovation is subject to personal jurisdiction in the Commonwealth of Virginia due to its extensive presence in the Commonwealth during the period of Adams's employment.[4]

### A.      Standard of Review

When personal jurisdiction is challenged, the jurisdictional question must be resolved by the court, with the burden on the plaintiff ultimately to prove personal jurisdiction by a preponderance of the evidence. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir.

---

[4] Indeed, the Court could conclude that Object Innovation's "nerve center" was located in Virginia, at least as late as August 2010, thus rendering it a citizen of Virginia for purposes of diversity jurisdiction, and thereby divesting this Court of subject matter jurisdiction. Such a conclusion is possible because its CEO and CFO were both operating the business from an office located in Virginia at that time and were, therefore, "direct[ing], control[ing], and coordinat[ing] the corporation's activities" from Virginia. Hertz Corp. v. Friend, __U.S.__, 130 S. Ct. 1181, 1186 (2010) (holding that the "nerve center" test controls a corporation's "principal place of business" to determine citizenship for diversity purposes). However, "[b]ecause diversity jurisdiction depends on the citizenship status of the parties *at the time an action commences*, [courts] must focus [the] jurisdictional inquiry solely on that time." Atena Auto., Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999) (emphasis added) (citing Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991); Leimbach v. Allen, 976 F.2d 912, 917 (4th Cir. 1992); Mullins v. Beatrice Pocahontas Co., 489 F.2d 260, 261 (4th Cir. 1974)). It is clear from the record that even if Object Innovation's "nerve center" ever was located in Virginia, it was removed from the Commonwealth before this action was filed in April 2011 because it had previously replaced Adams as CEO with one William Nygard, who now operates the business from Jacksonville, Florida. (Adams Decl. Ex. 1, 2011 Annual Report filed on March 17, 2011, ECF No. 15-1.)

1993).  If the issue is addressed on the basis of the motion papers, legal memoranda, allegations in the complaint, and jurisdictional discovery, the facts are to be viewed in the light most favorable to the plaintiff.  Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

Analysis of personal jurisdiction is a two-step inquiry consisting of both a statutory analysis and a constitutional due process component.  Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982).  A court may exercise jurisdiction over a non-resident defendant if: (1) authorized to do so by Virginia's long-arm statute, Va. Code § 8.01-328.1; and (2) if the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment.  Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (2009).  Functionally, the Court should proceed directly to step two of the analysis because the Fourth Circuit has recognized that "Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause."  Id. at 277.

To satisfy the due process requirement, the defendant must have sufficient "minimum contacts" with Virginia such that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (citation and quotation omitted).  Where, as here, only specific jurisdiction is alleged, "minimum contacts" exist "if the defendant has purposefully directed his activities at residents of the forum" and the plaintiff's cause of action "arise[s] out of or relate[s] to those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations and internal quotation marks omitted).  To assess whether the contacts meet this threshold, courts in the Fourth Circuit follow a three-part test: (1) the court must examine the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) the

9

court must determine if the plaintiff's claims arise out of those activities; and (3) the Court must consider whether the exercise of personal jurisdiction would be constitutionally reasonable.  ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

**B.      The Contacts Sufficiently Establish Personal Jurisdiction over Object Innovation**

There can be little doubt over the issue of personal jurisdiction where a business has employees in Virginia, maintained an office in Virginia and, the very nature of the suit concerns a contract to continue such employment in the state, albeit in a different capacity.  Under such conditions, the Fourth Circuit's three-part test is readily satisfied.

**1.      Purposeful Conduct Directed Toward Virginia**

First, the Court must assess the extent to which Object Innovation's contact with Virginia was purposeful.  Here, over several years of employing Adams, Object Innovation had leased office space in Virginia; employed its CEO, CFO, and CTO in Virginia, as well as others; accepted and deposited company funds at a bank branch located in Virginia; filed payroll taxes with the Virginia state government; and, for some duration, appeared to operate the entire company from Virginia.  During that time, Object Innovation knew that it was conducting an extensive portion of its operations from Virginia.  Thus, Object Innovation "purposefully availed itself of the privilege of conducting activities" in Virginia, thus satisfying the first prong of the test.  ALS Scan, Inc., 293 F.3d at 712.  Stated another way, Object Innovation could not be surprised that it would be called upon to address future employment disputes in Virginia.  This is especially true where, as here, Object Innovation specifically drafted the Contract to offer employment "from [Adams's] Richmond, VA home."  (Contract at 1.)

10

**2.     Adams's Claims Arise Out of his Virginia-Based Employment**

Next, the Court must determine whether Adams's claims arise out of Object Innovation's conduct in Virginia.  Although Object Innovation's contacts with Virginia may have since diminished to a large degree, those contacts that remain arise directly out of Object Innovation's contract negotiations with Adams.  Adams had been Object Innovation's CEO, fulfilling his duties in this role from an office in Virginia.  As this role with the company came to an end, Object Innovation began to negotiate a new role with Adams, intending that he would work in Virginia.  And to the extent that Adams fulfilled at least some duties in the new role (Vice President of Sales), he did so from Virginia.

Also of significance, Object Innovation has presented no evidence to contradict the fact that Wheeler traveled to Virginia to negotiate Adams's continued role with the company. (Adams Decl. at ¶ 17.)  Ultimately, Adams alleges that he performed his duties required by the contract in Virginia.  (Id. at ¶¶ 21-23.) Thus, viewing the jurisdictional facts in the light most favorable to Adams as the Plaintiff, see Mitrano, 377 F.3d at 406, the conduct at issue relates directly to Object Innovation's effort to continue Adams's employment in Virginia.  Thus, the Second factor is also satisfied.

**3.     Jurisdiction is Constitutionally Reasonable**

To determine whether the Court's exercise of personal jurisdiction over Object Innovation is constitutionally reasonable, the Court must consider the following: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies."  Consulting Eng'rs Corp., 561 F.3d at 279 (citations

11

omitted).  All of these factors weigh in favor of this Court exercising personal jurisdiction over Object Innovation.

First, there has been no showing that Object Innovation will suffer a burden if required to litigate in Virginia, especially where it has maintained an office and located several high-level employees here over the last several years.  Second, the states all share a strong interest in enforcing contracts negotiated and performed within their boundaries, especially when those contracts involve the employment of a state's own citizens.  Finally, Adams's interest in obtaining relief in a convenient forum weighs strongly in favor of a finding of personal jurisdiction.  As far as the record suggests, Adams has been employed by Object Innovation in Virginia for several years, conducting the vast majority of his activities on its behalf from offices in Powhatan, Virginia.  When a dispute arose between these parties, Adams logically selected the courts in the very state from which he had operated the company.  Thus, the exercise of personal jurisdiction over Object Innovation in Virginia is constitutionally reasonable.

## IV. DEFAULT JUDGMENT

Initially, the issue of default was presented to the Court in the form of Object Innovation's Motion to Vacate Default Judgment (ECF No. 10).  Because the District Judge has since vacated the default judgment as having been entered in error, the issue is now before the Court in the form of Adams's Motion for Entry of Default Judgment or in the Alternative for Partial Summary Judgment and/or Motion to Amend (ECF No. 21).  Substantively, the issues related to default remain the same, but procedurally, the Court must now address the matter pursuant to Fed. R. Civ. P. 55(c), as opposed to Fed. R. Civ. P. 60(b).  The distinction is significant because Rule 55(c) may be invoked upon a showing of "good cause," whereas Rule

60(b) may be invoked only if Object Innovation can satisfy the more stringent "excusable neglect" standard.  Colleton Preparatory Acad., 616 F.3d at 420.

### A.       Standard of Review for Relief from Default

Pursuant to Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause."  Although the decision whether to set aside default is within the sound discretion of the court, six factors must be considered in exercising such discretion: (1) whether the party in default has a meritorious defense; (2) whether it acted with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) prejudice to the party; (5) the history of dilatory action; and (6) the availability of less drastic sanctions.  Colleton Preparatory Acad., 616 F.3d at 417 (citations omitted).  Moreover, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."  Id. (citations omitted).

### B.       Relief May Be Properly Considered Pursuant to Rule 55(c)

Object Innovation's basis for claiming "good cause" to set aside default is that its "outside" general counsel, Roberts, misunderstood whether its registered agent, Sirdevan, had been properly served with process.  Of course, Roberts is more than merely "outside" general counsel -- he serves as a duly elected corporate officer.  (Pl.'s Ex. 16-1, Florida Department of State Certified 2010 Annual Report, ECF No. 16-1.)  Thus, his actions are more properly construed as those of Object Innovation itself, not outside counsel.  Were the Court required to apply the more onerous standard of Rule 60(b)(1) for vacating a default *judgment*, then such neglect of the party itself could not be overlooked, and default judgment would stand.  See Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987) ("[A] party seeking relief from a default judgment under Rule 60(b)(1) must show not only that he has a meritorious defense, but

also that he had an acceptable excuse for lapsing into default") (citations and internal quotation marks omitted).

However, it is well-established in the Fourth Circuit that a Rule 55(c) motion is more "forgiving" than a Rule 60(b) motion.  Colleton Preparatory Acad., 616 F.3d at 420.  As the Fourth Circuit has explained the distinction:

> Although we have analyzed Rule 55(c) and Rule 60(b) motions using the same factors, the burden on a movant seeking relief under the two rules is not the same. As the district court recognized, Rule 60(b) motions request relief from judgment, which implicates an interest in finality and repose, a situation that is not present when default has been entered under Rule 55(a) and no judgment has been rendered.  Therefore, while an analysis under each rule employs similar factors, Rule 60(b)'s "excusable neglect" standard is a more onerous standard than Rule 55(c)'s "good cause" standard, which is *more forgiving of defaulting parties* because it does not implicate any interest in finality.

Id. at 420 (citations omitted) (emphasis added).

In articulating the distinction between the Rule 55(c) and Rule 60(b) standards, the Fourth Circuit specifically rejected a party's reliance on the case of Park Corp. v. Lexington Ins. Co., 812 F.2d 894 (4th Cir. 1987).  The Court emphasized the fact that "the defaulting party [in Park Corp.] offered *no explanation* for the disappearance of the summons and complaint," which fails to justify relief under Rule 60(b).  Colleton Preparatory Acad., 616 F.3d at 420.  In contrast, the Court found "good cause" for Rule 55(c) purposes where the defaulting party "admitted to its mishandling of process, and offered some explanation."  Id.  Indeed, the Fourth Circuit held that it was an abuse of discretion to deny Rule 55(c) relief under such circumstances, "adher[ing] to [its] long-held view that Rule 55(c) motions must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'"  Id. (citing Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) (internal citation omitted)).

14

In advance of formal service, Sirdevan had become the frequent recipient of numerous courtesy copies of the pleadings in the case sent by law firms seeking to represent Object Innovation -- a creative marketing practice that generated some confusion for Sirdevan over the nature of the pleadings received.  (Sirdevan Decl. at ¶ 3.)  And although Roberts appears to have understood that the May 9, 2011 delivery of the Summons and Complaint was, at a minimum, an attempt at formal service, he concluded that it was improper service by U.S. Mail.  (Roberts Decl. at ¶ 8.)  As all parties now agree, Sirdevan was personally and lawfully served at his home. The miscommunication between Sirdevan and Roberts appears to be the result of a good-faith mistake and, as was the case in Colleton Preparatory Acad., Object Innovation quickly admitted its mistake and offered a reasonable explanation.  Therefore, the Court finds that relief may be appropriately considered pursuant to Fed. R. Civ. P. 55(c), and will proceed to apply the six-factor test.

**C.      The Six-Factor Analysis Weighs in Favor of Setting Aside Entry of Default**

As explained *supra* at Section IV(A), a court considering whether to grant discretionary relief from the entry of default must consider the following factors: (1) whether the party in default has a meritorious defense; (2) whether it acted with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) prejudice to the party; (5) the history of dilatory action; and (6) the availability of less drastic sanctions.  Colleton Preparatory Acad., 616 F.3d at 417 (citations omitted).  Five of these six factors favor relief in this case, and the other (personal responsibility) is of relatively minimal weight under these circumstances.

**1.      Meritorious Defense**

First, Object Innovation has proffered evidence of a meritorious defense, claiming that a condition precedent was never satisfied and that timely acceptance of the offered employment

15

was not demonstrated to Object Innovation, as required by the terms of the Contract.  The

standard for such a showing is not high, requiring merely "some possibility" of a result in Object

Innovation's favor at trial.  <u>Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.</u>, 843

F.2d 808, 812 (4th Cir. 1988).  Because there is no date next to his signature, the Contract on its

face fails to demonstrate conclusively whether Adams accepted the agreement before the stated

deadline of December 3, 2010.  (Compl. at Ex. C.)

Moreover, it appears to be undisputed that Adams never signed the Confidentiality and

Proprietary Rights Assignment Agreement, as required.  Although Virginia's prevention doctrine

may arguably waive or excuse the signing of the Confidentiality Agreement as a condition

precedent, <u>see</u> <u>Moore Bros. Co. v. Brown & Root, Inc.</u>, 207 F.3d 717, 725 (4th Cir. 2000), there

is no evidence to establish that the December 3, 2010 deadline for acceptance was met.  Thus,

even if Virginia's prevention doctrine forecloses Object Innovation's reliance on the

Confidentiality Agreement as a condition precedent, it would not preclude its reliance on the

acceptance deadline.  Thus, Object Innovation has at least one meritorious defense which may

ultimately result in a judgment in its favor.

### 2.    Reasonable Promptness

Local counsel for Object Innovation discovered the default immediately as a result of his

own initiative.  (Anders Decl. at ¶¶ 6-7.)  Within nine days, Object Innovation filed its request

for relief from default.  Such prompt action clearly demonstrates a timely effort to set aside

default.

### 3.    Personal Responsibility

To some extent, Object Innovation bears some personal responsibility for its failure

because Roberts is more than mere outside counsel -- he is a corporate officer.  (Anders Decl. at

¶ 4; Pl.'s Ex. 16-1.)  It was Roberts who hastily drew the erroneous conclusion that service on Sirdevan was not proper.  At the same time, Roberts and Sirdevan did not act in bad faith, and have since admitted their mistakes in forming the erroneous conclusion.  The Fourth Circuit instructs that the Court should be more "forgiving," especially where the defendant relies upon Rule 55(c) to obtain relief.  Colleton Preparatory Acad., 616 F.3d at 420.  Moreover, no single factor is to be given disproportionate weight in the analysis.  Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984) ("[I]t is difficult if not inappropriate in many cases to specify or restrict the claim for relief [from default] to a particular itemized ground") (citation omitted).  Thus, any personal responsibility for an honest, albeit negligent mistake is not dispositive of the issue here.

**4.      Prejudice to Adams**

Adams's claimed prejudice is that he will continue to suffer the damages allegedly resulting from the breach of contract.  However, there is no prejudice suffered by requiring Adams to prove his case on the merits.  Where possible pursuant to the Federal Rules of Civil Procedure, the Fourth Circuit instructs that the trial courts should reach the merits of a claim.  Colleton Preparatory Acad., 616 F.3d at 417 (citations omitted); Werner, 731 F.2d at 207.  Any unfair delay can be remedied by requiring Object Innovation to compensate Adams for the attorney's fees arising out of the motions related to the default, *infra* at Section IV(C)(6).

**5.      History of Dilatory Action**

The now-pending motions were filed in a reasonably quick fashion, and there is no other history of delay in this case.  In fact, Object Innovation filed its Answer on the very next day after the Court set aside the default judgment.  (ECF Nos. 19, 20.)  Thus, this factor weighs heavily in favor of granting relief from entry of default.

### 6.      Less Drastic Sanctions

The only real harm suffered by Adams as a result of the protracted efforts to set aside entry of default is delay and the associated attorney's fees.  To remedy this problem, Object Innovation has offered to pay Adams's attorney's fees resulting from its default and the resulting motions.  (Def.'s Mem. Opp'n Pl.'s Mot. Entry of Default J. at 5, ECF No. 23.)  Accepting this proposition, the Court hereby recommends that Object Innovation be required to compensate Adams for all attorney's fees and costs arising out of the default proceedings.

## D.      Adams's Request for Alternative Relief

As alternatives to a default judgment, Adams requests partial summary judgment or leave to amend his Complaint.  The motion for summary judgment is defective because it does not include a "specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed."  E.D. Va. Loc. R. 56(B).  Indeed, Adams makes no effort to identify any undisputed material facts.  He also neglected to file a separate brief in support of his motion for partial summary judgment, as required by E.D. Va. Loc. R. 7(F)(1).  These are not mere technical requirements; the Court and the opposing party rely upon the "listing of all material facts" in order to assess the extent to which the facts support summary judgment.  See also Fed. R. Civ. P. 56(c), (e).  For example, the Court cannot determine here whether Adams accepted and executed the Contract prior to December 3, 2010, as required.  (Contract at 3.)  Thus, the Court cannot begin to assess the propriety of summary judgment, and therefore recommends that it be DENIED.

However, Adams should be granted leave to amend his Complaint.  Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend pleadings] when justice so

18

requires."  "Motions to amend are typically granted in the absence of an improper motive, such

as undue delay, bad faith, or repeated failure to cure a deficiency by amendments previously

allowed."  <u>Harless v. CSX Hotels, Inc.</u>, 389 F.3d 444, 447 (4th Cir. 2004).  A lack of prejudice to

the nonmoving party, alone, ordinarily warrants granting leave to amend.  <u>Ward Elec. Serv., Inc.</u>

<u>v. First Commercial Bank</u>, 819 F.2d 496, 497 (4th Cir. 1987).  Here, the only basis for opposing

the motion is that Adams failed to file a separate memorandum in support of the motion.  Unlike

the circumstances of the partial motion for summary judgment, where failure to follow the local

rules impacts the Court's analysis of the issue, there appears to be no good cause to deny leave to

amend.  Accordingly, the Court recommends that Adams be GRANTED leave to amend his

Complaint.

## V. CONCLUSION

In conclusion, and for the reasons discussed herein, it is the recommendation of this

Court that the Defendant's Motion to Vacate Default Judgment (ECF No. 10) and the

Defendant's Motion for Extension of Time to File Answer (EFC No. 11) be GRANTED; that the

Plaintiff's Motion to Seal Declaration and Exhibits in Support of Motion for Default Judgment

(ECF No. 20) be GRANTED; and that the Plaintiff's Motion for Default Judgment (ECF No. 21)

be DENIED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to

the Honorable Robert E. Payne, with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                _____/s/_____
                                                Dennis W. Dohnal
                                                United States Magistrate Judge

Richmond, Virginia
Dated: December 5, 2011

20